IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| WELLS FARGO BANK, N.A.,<br><br>                Plaintiff,<br>v.<br><br>STEWART TITLE GUARANTY COMPANY,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:19-cv-00285-DB-JCB<br><br>District Judge Dee Benson<br><br>Magistrate Judge Jared C. Bennett |

District Judge Dee Benson referred this case to Magistrate Judge Paul M. Warner under 28 U.S.C. § 636(b)(1)(A).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett.[2] Before the court is Defendant Stewart Title Guaranty Company's ("STGC") Motion to Exclude Expert Testimony.[3] The court held oral argument on the motions on September 29, 2020.[4] At the conclusion of the hearing, the court took the motion under advisement. After consideration of the memoranda submitted by the parties, the relevant law, and the oral argument presented by counsel, the court renders the following Memorandum Decision and Order.

---

[1] ECF No. 6.
[2] ECF No. 34.
[3] ECF No. 45.
[4] ECF No. 60.

## BACKGROUND

In 2006, STGC issued a policy of title insurance ("Title Policy") guaranteeing that its client, United Park City Mines Company ("UPCM"), owned certain real property, which consisted of contiguous parcels of land stretching across three Utah counties: Summit, Wasatch, and Salt Lake. These parcels were pledged as collateral to secure a loan made by Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"). In 2015, Wells Fargo attempted to foreclose upon the property owned by UPCM only to discover that UPCM did not own 127 acres of the property that Wells Fargo believed that UPCM owned. This property was a 2.5-mile strip along the upper ridgeline of the southern border of the Deer Valley and Park City ski resorts between Summit and Wasatch counties (hereinafter, the "Property"). In accordance with the Title Policy, Wells Fargo submitted a claim to STGC to recover the loss caused by the title defect.

In fact, the definition of "Loss" under the Title Policy is a central issue in this case. Section 7 of the Title Policy, which governs Loss, reads, in relevant part:

> (7) DETERMINATION AND EXTENT OF LIABILITY
>
> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
>
> (a) The liability of the Company under this policy shall not exceed the lease of;
>
> . . . .
>
> (iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.[5]

---

[5] ECF No. 45 at 6; ECF No. 45-1, Ex. A at 83.

The parties do not dispute that Section 7(a)(iii) controls how Loss is to be calculated under the Title Policy. However, the parties dispute how this section should be interpreted.[6] In effect, STGC argues that Section 7(a)(iii) should be interpreted to measure Loss as the impact of the Property defect on the value of remaining parcels of insured property.[7] Conversely, Wells Fargo argues that Section 7(a)(iii) should be interpreted to measure Loss as the market value of parcel mistakenly thought to be owned by UPCM and insured by SGTC, regardless of the impact on the Bonanza Flats property.[8]

Because of this difference in interpretation, both parties' experts appraised the Property according to each parties' respective interpretation of Section 7(a)(iii). On the one hand, Wells Fargo's expert, Christopher T. Hansen ("Mr. Hansen") employed a cost-based method to value the Property, which calculates value as the highest and best use of the Property.[9] On the other hand, STGC's expert used a diminution-in-value method to appraise the Property.[10] Given these two divergent interpretations of "Loss," the two experts' determinations vary greatly.

Because Mr. Hansen appraised the Property based on Wells Fargo's interpretation of the Loss provision in the Title Policy, STGC moves this court to exclude Mr. Hansen's opinions under Fed. R. Evid. 702. As shown below, STGC's motion fails.

## LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence establishes the standard for the admissibility of expert testimony.

---

[6] ECF No. 45 at 6-7; ECF No. 47 at 3; ECF No. 49 at 1-2.
[7] ECF No. 49 at 2.
[8] ECF No. 47 at 3-4; ECF No. 49 at 2.
[9] ECF No. 47 at 3-4; ECF No. 45-6 at 11.
[10] ECF No. 45 at 5-6.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The United States Supreme Court has explained that Rule 702 creates a gatekeeping function. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). It is the responsibility of the district courts to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. District courts are given "broad latitude" in deciding "how to determine reliability" and in making the "ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142. However, exclusion of expert testimony is the exception rather than the rule,[11] and often times the most appropriate way to attack shaky-but-admissible evidence is through vigorous cross-examination and the presentation of contrary evidence. *Daubert*, 509 U.S. at 596.

Under *Daubert*, proposed expert testimony must be supported by "appropriate validation," i.e., good grounds based on what is known.'" *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (quoting *Daubert*, 509 U.S. at 590). But the proponent of expert testimony need not prove that the "expert is indisputably correct or that the expert's theory is

---

[11] Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

'generally accepted' in the scientific community." *Id.* "Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* The Supreme Court has articulated four non-exclusive inquires that a district court may undertake in assessing the reliability of an expert's methodology: (1) whether the expert's theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has general acceptance. *Id*. at 593-94.

## ANALYSIS

STGC now seeks to exclude Mr. Hansen's opinions regarding his appraisal of the Property as not reliable for three reasons.[12] First, STGC objects to Mr. Hansen's cost method of appraisal because it conflicts with the diminution-in-value method that STGC asserts is required under Section 7(a)(iii) of the Title Policy. Second, STGC objects to Mr. Hansen's opinions that the ski lift top stations are improvements to the land because these top stations are owned by third parties and, therefore, should be treated as encumbrances to the land, which diminish the land's value instead of improvements that greatly increase value. Finally, STGC contends that Mr. Hansen's testimony about the ridge-top premium adjustment is unreliable because it lacks support from any published source in the appraisal community.

The court addresses each argument in turn. STGC's first two arguments are improper for resolution under Rule 702 because they do not question whether Mr. Hansen complied with the

---

[12] Mr. Hansen's qualifications as an expert are unchallenged here, and the court finds that Mr. Hansen is qualified to provide expert testimony in this case.

accepted methods and techniques of property appraisal but contend that Wells Fargo misapplied the law. Consequently, STGC's arguments are improper challenges under Rule 702 and are better suited for summary judgment. As to STGC's third argument, Mr. Hansen's testimony is based on reliable appraisal principles and methods. Therefore, STGC's motion fails.

## I.     Appraisal Method

STGC contends that Mr. Hansen's appraisal of the Property is unreliable because the methodology he used for calculating Loss is not permitted under Section 7(a)(iii) the Policy.[13] STGC's motion does not challenge the reliability of the principles or techniques employed by Mr. Hansen. Rather, STGC challenges Wells Fargo's interpretation of the Title Policy. The two are certainly related: The interpretation of the Title Policy will impact estimated Loss value. The correct interpretation of the Title Policy, however, presents a question of law, which is best resolved on summary judgment not in a motion under Rule 702. Stated differently, the court will not entertain summary judgment-esque arguments disguised as *Daubert* objections. *Okla. ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC*, 529 F. App'x 886, 896 (10th Cir. 2013); *see also Sabal Trail Trans., LLC v. 0.589 Acres of Land in Hamilton Cty.*, No. 3:16-CV-277-J-34JBT, 2018 WL 3655556, at *7 (M.D. Fla. Aug. 2, 2018); *Kirksey v. Schindler Elevator Corp.*, No. CV 15-0115-WS-N, 2016 WL 5213928, at *3 (S.D. Ala. Sept. 21, 2016).

And this is precisely what STGC seeks to do here. For instance, if Judge Benson were to interpret the Title Policy in a manner consistent with Wells Fargo's legal interpretation of "Loss," then Mr. Hansen's approach to the appraisal will be well taken, and, conversely, STGC's

---

[13] ECF No. 45 at 6.

expert's diminution-in-value appraisal will become of little value in determining Loss. Notice that the difference between one expert's opinion being "reliable" does not turn on whether he applied the proper methods of property appraisal but on whether the Title Policy should be interpreted according to Wells Fargo's or STGC's view of contract interpretation. This is an issue of law that does not require this court to determine whether each appraiser appropriately applied the rules of his profession. This is an issue concerning which party properly instructed its expert on the law. Because STGC's first argument is not a proper argument under Rule 702, the court rejects it.

## II.     Ownership Interests

STGC's next argument suffers from the same flaw as its first. STGC argues that regardless of which appraisal method that Mr. Hansen applied, he improperly assumed that the top ski-lift stations and adjacent sheds are value-adding "fixtures" instead of value-reducing "encumbrances." Determining whether an item on property is a "fixture" or an "encumbrance" requires the court to evaluate facts and then apply those facts to the legal definition of each to determine, as a matter of law, whether an item is a "fixture" that adds value to the land or is an "encumbrance" that reduces the land's value. *See, e.g.*, *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1203 (10th Cir. 2016); *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1252 (10th Cir. 2005).

In both the briefs and at oral argument, the court was surprised that neither party could definitively state who owns the lift stations or the nearby employee and communications sheds. In other words, there is currently a dispute over whether these items are "fixtures" or "encumbrances" as a matter of law. Once again, if Judge Benson were to determine that some or

all of these items were "fixtures," then Mr. Hansen's appraisal becomes more relevant, and STGC's appraisal treating them as "encumbrances" becomes of little value. Thus, the usefulness of each appraiser's work to the court turns on a legal determination instead of on the reliability of the methods that each appraiser used. That is not Rule 702; that is the stuff of summary judgment. Consequently, STGC's second argument fails under Rule 702.

### III.     Ridge Top Premium Adjustment

Finally, STGC asserts that Mr. Hansen's estimates of the ridge top premium adjustment are not reliable simply because Mr. Hansen stated in his deposition that he personally could not identify any professional articles on the issues.[14] Peer review and publication, however, is only one of the four non-dispositive *Daubert* factors. Conversely, factors (1) and (4) adopt a more experiential lens that recognizes that each expert's experience provides the method of evaluation if properly explained. This is important here because the principles of real estate valuation recognize that market forces drive property values and that enumerating all of the factors that increase or decrease value in the market is impossible given the differences between the location and features of land parcels across the United States. Given the diversity of land and its uses in the United States, the appraisal literature could not possibly provide an exegesis on every real property feature that may increase the value of a particular piece of property.  Thus, the touchstone for whether a feature of land adds value is whether the appraiser can explain why that feature is important to the market in which the property is situated. Here, Mr. Hansen explained why property located on a ridge top can obtain higher prices in a market where land is used as

---

[14] ECF No. 45 at 9; ECF No. 45-6 at 19.

part of a skiing operation, which the appraised parcel is. Thus, the court is not persuaded that a lack of professional literature describing such adjustment renders Mr. Hansen's techniques unreliable; to the contrary, the court finds Mr. Hansen's testimony is the product of reliable principles and methods commonly employed in the real estate field and denies STGC's motion on those grounds.[15]

## ORDER

Based on the foregoing, STGC's Motion to Exclude Expert Testimony[16] is DENIED.

DATED this 2nd day of November 2020.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

.

---

[15] Additionally, STGC contends that Mr. Hansen's opinion is unreliable for failing to consider the value of a long-term lease that may affect the property. To the extent this lease applies to the appraised property but was not considered in valuing the property, STGC may have a fruitful field of cross-examination, but it would not render the entire appraisal so deficient that it must be stricken as entirely unreliable. Therefore, STGC's argument relating to a long-term lease does not carry the day under Rule 702.

[16] ECF No. 45.